UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-411-BR

| | |
|---|---|
| CHRISTOPHER EUGENE BUCKNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on (1) plaintiff Christopher Eugene Buckner's ("plaintiff") motion to amend the complaint; (2) plaintiff's motion for default judgment; and (3) defendant United Parcel Service, Inc.'s ("UPS") motion for summary judgment. The period to respond and reply to these motions has elapsed, and the matters are now ripe for disposition.

**I. BACKGROUND**

Plaintiff, who is proceeding *pro se*, currently works at the UPS hub in Raleigh, North Carolina. (Pl.'s Dep., DE # 76-2, at 14.) UPS utilizes drivers in multiple positions within the company. (J. Hale Decl., DE # 85-1, ¶ 6.)[1] UPS Package Car Drivers are full-time drivers who operate delivery vehicles along pre-assigned delivery routes. (Id. ¶ 5.) Cover Drivers are part-time employees who are formally assigned to load and unload packages inside a UPS facility, but who also have sufficient seniority to spend all or almost all of their time filling in for Package Car Drivers who are out of work for any reason, including vacations, holidays, and medical leave. (Id. ¶ 6.) Because a Cover Driver operates the delivery vehicle assigned to the

---

[1] The declaration of James Robert Hale was originally filed along with UPS's motion for summary judgment on 29 February 2012 (see DE # 76-3), but it was filed again on 21 March 2012 in order to correct an e-filing error (see DE ## 80, 83, 85-1).

Package Car Driver's normal delivery route, the essential job functions of a Cover Driver are identical to that of a Package Car Driver. (Id.) UPS also employs Air Drivers, who are responsible for delivering and picking up packages to be transported by air rather than ground shipment. (Id. ¶ 7.)

Plaintiff first began working for UPS as a temporary employee in October 2006, when he applied to become a driver during UPS's "peak season," which runs from Thanksgiving through Christmas. (Pl.'s Dep., DE # 76-2, at 10, 12, 21.) During his 2006 peak season work, plaintiff drove multiple vehicles for UPS, including package cars, minivans, and 24-foot vans, which are among the largest vehicles a driver can operate without a commercial driver's license. (Id. at 12-13.)

Plaintiff was subsequently hired for part-time permanent employment with UPS in January 2007. (Id. at 14-15, 18, 21.) Soon thereafter, he began performing air driving duties. (Id. at 24.) As an Air Driver, plaintiff never knows which type of vehicle he will be driving for UPS, but he is always ready and willing to perform whatever driving tasks UPS requires of him in whatever vehicle is available. (Id. at 16, 71; J. Hale Decl., DE # 85-1, ¶ 8.)

Shortly after beginning his permanent employment with UPS, plaintiff also began to work as a Cover Driver. (Pl.'s Dep., DE # 76-2, at 40-42.) Because Cover Drivers at the Raleigh hub can be asked to cover any route or partial route at any of the package centers within the hub, plaintiff never knows what route he will be driving as a Cover Driver. (Id. at 69; J. Hale Decl., DE # 85-1, ¶ 6.) In addition, plaintiff typically drives whatever vehicle is assigned to the route he is covering. Therefore, he does not know what vehicle he will be driving on any given day. (Pl.'s Dep., DE # 76-2, at 69, 83; J. Hale Decl., DE # 85-1, ¶¶ 6, 8.) Given the varied

2

nature of plaintiff's driving duties, he may be asked to drive multiple vehicles during a single day. (Pl.'s Dep., DE # 76-2, at 71; J. Hale Decl., DE # 85-1, ¶ 6.) Because most of the vehicles at the Raleigh hub weigh in excess of 10,000 pounds, plaintiff regularly operates vehicles weighing more than 10,000 pounds. (J. Hale Decl., DE # 85-1, ¶ 17 & Ex. 1, DE # 85-2.) In short, plaintiff has been driving for UPS on a daily basis since the outset of his employment. (Id. ¶ 16; Pl.'s Dep., DE # 76-2, at 36, 45-46.)

Plaintiff commenced this action on 14 September 2009 by filing a motion to proceed *in forma pauperis*, and he attached his complaint to the motion. (DE # 1.) He initially alleged violations of the National Labor Relations Act, the North Carolina Wage and Hour Act, the Labor Management Relations Act, the Fair Labor Standards Act ("FLSA"), and some federal and state administrative code sections. (Compl., DE # 4.) However, the court subsequently dismissed almost all of plaintiff's claims. His overtime claim under the FLSA, 29 U.S.C. § 201 *et seq.*, is the only claim that remains. (See DE ## 28, 36.)

## II. DISCUSSION

A.  Plaintiff's Motion to Amend Complaint

Plaintiff filed a motion to amend his complaint on 24 February 2012. (DE # 70.) In his proposed second amended complaint, plaintiff seeks to reassert a claim under the North Carolina Wage and Hour Act that was previously dismissed. (See DE ## 4, 28, 29, 36, 37, 70.) If a party wishes to amend his complaint, that party must follow the process set forth in the Federal Rules of Civil Procedure. Under Rule 15, provided that certain time requirements are met, a party may amend a pleading once as a matter of course. See Fed. R. Civ. P. 15(a)(1). Additional amendments are allowed under Rule 15 only with the permission of the opposing party or with

3

leave of court, and such leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).

However, the process changes once a court enters a scheduling order under Rule 16, imposes a deadline concerning amendments to pleadings, and the deadline expires. At that point, in order for a party to amend a pleading, the party must first establish "good cause" under Rule 16 and then establish the traditional requirements under Rule 15, *i.e.*, the absence of prejudice, futility, and bad faith. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298-99 (4th Cir. 2008). If the party fails to establish "good cause" under Rule 16, a trial court may deny the motion to amend and need not conduct the inquiry under Rule 15. Id.; see also Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778, 783-84 (E.D.N.C. 2011); Halpern v. Wake Forest Univ. Health Scis., 268 F.R.D. 264, 266 (M.D.N.C. 2010). As the Fourth Circuit Court of Appeals has stated: "Given their heavy case loads, district courts require the effective case management tools provided by Rule 16." Nourison Rug, 535 F.3d at 298.

"Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Stonecrest Partners, 770 F. Supp. 2d at 784 (citation and internal quotation marks omitted). Here, plaintiff's deadline for amending the pleadings was 1 March 2011. (See DE ## 42 at 2; 45; 46.) The proposed amendment comes almost a year after this deadline has passed. However, the amendment is clearly based on facts that plaintiff was aware of at the time that he filed this lawsuit in 2009, as he unsuccessfully asserted the exact same cause of action in his initial complaint. (See DE # 4.) Accordingly, he cannot demonstrate good cause under Rule 16(b). See, e.g., United States v. Godwin, 247 F.R.D. 503, 508 (E.D.N.C. 2007) (moving party could

4

not demonstrate good cause under Rule 16(b) where the information on which the amendment was based was readily available and discoverable before the amendment deadline). Furthermore, although the court recognizes that plaintiff is proceeding *pro se*, he has provided absolutely no explanation for his delay in filing the proposed amendment. (See DE # 70.) As a result, the motion to amend the complaint will be denied.

B.   UPS's Motion for Summary Judgment

Although his pleadings are not a model of clarity, plaintiff appears to have two different overtime claims under the FLSA. First, he asserts that UPS failed to pay him the proper wage rate under the collective bargaining agreement between UPS and the Teamsters labor union for weeks in which he worked overtime. (See, e.g., Am. Compl., DE # 37, at 3 ¶ 2; Pl.'s Dep., DE # 76-2, at 102-03, 107-10.) Second, plaintiff maintains that UPS made alterations to his electronic time records, which deprived him of the appropriate pay for overtime worked. (See, e.g., Am. Compl., DE # 37, at 3 ¶ 2; Pl.'s Dep., DE # 76-2, at 102, 107, 111-12.) UPS has moved for summary judgment on the overtime claims, arguing that plaintiff is exempt from the FLSA's overtime provisions under the federal Motor Carrier Act exemption.

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing

5

law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id. at 252. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

Section 207(a)(1) of the FLSA sets forth the right of employees to receive overtime pay "at a rate not less than one and one-half times the regular rate" for any hours worked in excess of forty in any work week. 29 U.S.C. § 207(a)(1). However, the overtime provisions of the FLSA do not apply to any employee covered by the Motor Carrier Act ("MCA") exemption. 29 U.S.C. § 213(b)(1). Consequently, an employer is not required to pay overtime wages to employees who fall within the MCA exemption. The court notes at the outset that exemptions from the FLSA are to be construed narrowly against the employer. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960); Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263, 1267 (4th Cir. 1996).

The MCA exemption applies to "any employee with respect to whom the Secretary of

6

Case 5:09-cv-00411-BR   Document 88   Filed 05/07/12   Page 6 of 19

Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Section 31502 provides the Secretary of Transportation with the authority to "prescribe requirements for . . . qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. § 31502(b)(1). "This specific grant of jurisdiction, however, is qualified by the Motor Carrier Act's general limitation on jurisdiction, which is limited, in pertinent part, to transportation in interstate commerce." Tews v. Renzenberger, Inc., 592 F. Supp. 2d 1331, 1343 (D. Kan. 2009) (citing 49 U.S.C. § 13501); see also 29 C.F.R. § 782.2(a).

Before August 2005, a "motor carrier" was defined as a "person providing motor vehicle transportation for compensation," and the MCA exemption "applied to all drivers operating in interstate commerce, regardless of the weight of the vehicle driven." Glanville v. Dupar, Inc., No. H-08-2537, 2009 WL 3255292, at *4 (S.D. Tex. Sept. 25, 2009) (citation and internal quotation marks omitted). On 10 August 2005, however, Congress changed the definition of a "motor carrier." See the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA–LU"), Pub. L. No. 109-59, § 4142, 119 Stat. 1144, 1747 (2005). SAFETEA–LU replaced the term "motor vehicle" with "commercial motor vehicle," and commercial motor vehicles are defined as vehicles having a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds. See id.; Brooks v. Halsted Commc'ns, Ltd., 620 F. Supp. 2d 193, 197 (D. Mass. 2009) (citing 49 U.S.C. § 31132(1)(A)). As a result, employees of motor carriers operating vehicles weighing less than 10,001 pounds no longer qualified for the MCA exemption to the FLSA's overtime provisions. See Brooks, 620 F. Supp. 2d at 197-98.

Then, on 6 June 2008, Congress passed the SAFETEA–LU Technical Corrections Act of

7

2008 ("TCA"), Pub. L. No. 110–244, §§ 305–06, 122 Stat. 1572, 1620–21 (2008). The TCA restored the previous definition of a "motor carrier" but retained the limitation on the applicability of the MCA exemption to motor vehicles weighing at least 10,001 pounds. See Glanville, 2009 WL 3255292, at *4. Thus, to establish the applicability of the MCA exemption for the time periods relevant to this action, UPS must show that it is a motor carrier under the MCA and that plaintiff's employment duties involved the safety of operation of motor vehicles weighing at least 10,001 pounds in interstate commerce. See, e.g., Dalton v. Sabo, Inc., Civ. No. 09-358-AA, 2010 WL 1325613, at *3 (D. Or. Apr. 1, 2010); Glanville, 2009 WL 3255292, at *3-4.

The court first finds that UPS clearly qualifies as a motor carrier under the MCA because it transports commodities for compensation (see J. Hale Decl., DE # 85-1, ¶ 3). See 49 U.S.C. § 13102(14); Shoemaker v. UPS, Inc., No. 1:10-CV-185-EJL-CWD, 2011 WL 836998, at *8 (D. Idaho Feb. 10, 2011) (report and recommendation) ("It is undisputed that UPS is a motor carrier that engages primarily in interstate commerce on a national and global scale."), adopted, 2011 WL 863015 (D. Idaho Mar. 9, 2011).

As previously explained, UPS must also show that plaintiff's employment duties involve the operation of motor vehicles weighing at least 10,001 pounds. Here, the records submitted by UPS demonstrate that plaintiff has regularly operated vehicles weighing at least 10,001 pounds throughout the course of his employment with UPS. (See J. Hale Decl., DE # 85-1, ¶ 17 & Ex. 1, DE # 85-2.)

Plaintiff attempts to create a dispute of material fact with respect to this issue by arguing that "there are Air Drivers that on almost every day operate vehicles weighing less than 10,000

8

pounds and very rarely operate any of the vehicles weighing more than 10,000 pounds." (Decl. Resp. J. Hale Decl., DE # 79, at 4 ¶ 4.)[2] However, the fact that other UPS employees may rarely, if ever, operate vehicles weighing at least 10,001 pounds does not help plaintiff's case because the applicability of this element of the MCA exemption involves individual-specific determinations. See, e.g., Fox v. Commonw. Worldwide Chauffeured Transp. of NY, LLC, No. 08-CV-1686 (NGG) (RML), 2012 WL 1078230, at *7 (E.D.N.Y. Mar. 30, 2012) (MCA exemption applies where there is "at least some nexus between an individual worker's duties" and the use of motor vehicles weighing more than 10,000 pounds); Brooks, 620 F. Supp. 2d at 201 (following the enactment of the TCA, "all employers in the motor carrier industry were required to distinguish for purposes of compensation between employees who operated light vehicles and those operating commercial vehicles"); Tews, 592 F. Supp. 2d at 1348 ("the applicability of the motor carrier exemption turns on the activities of each individual plaintiff (as opposed to the makeup of defendant's vehicle fleet)"). Here, plaintiff does not dispute that he has driven vehicles weighing in excess of 10,000 pounds in the normal course of his employment duties.[3] As a result, the court finds that UPS has presented uncontested evidence demonstrating

---

[2] Plaintiff filed a response to UPS's motion for summary judgment on 6 March 2012. (DE # 78.) On that same date, he also filed a separate document entitled "Declaration in Response to Declaration of James Robert Hale." (DE # 79.) Because plaintiff is proceeding *pro se*, the court has considered this additional document in rendering its decision on the motion for summary judgment.

[3] The court also notes that even though plaintiff himself may have operated vehicles weighing 10,000 pounds or less at certain times over the course of his employment, he nonetheless remains subject to the MCA exemption. See, e.g., Avery v. Chariots for Hire, 748 F. Supp. 2d 492, 500 (D. Md. 2010) (The "motor vehicle exemption should apply so long as the time an employee spends operating commercial motor vehicles [*i.e.*, vehicles weighing at least 10,001 pounds] is more than de minimus" because "[d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes." (second alteration in original) (citation and internal quotation marks omitted)); Dalton, 2010 WL 1325613, at *4 (finding that
(continued...)

that plaintiff's employment duties involve the operation of motor vehicles weighing at least 10,001 pounds.

Next, in order for the MCA exemption to apply, UPS must show that plaintiff is engaged in the transport of property in interstate commerce. Plaintiff and other UPS drivers are involved in interstate commerce because they pick up and deliver goods that travel both nationwide and worldwide, and they typically complete either the initial or final legs of the packages' movement throughout the country and around the world. (J. Hale Decl., DE # 85-1, ¶ 5; Pl.'s Dep., DE # 76-2, at 66-67, 128.) While plaintiff's driving duties typically take place entirely within the state of North Carolina (see UPS's Mem. Supp. Mot. Summ. J., DE # 76-7, at 15; Pl.'s Decl. Resp. Mot. Summ. J., DE # 78, at 9), the law is clear that he is still engaged in interstate commerce for the purposes of the MCA exemption. See, e.g., Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895, 896-98 (7th Cir. 2009) (drivers' transportation of wine that took place solely in the state of Illinois nevertheless constituted interstate commerce); Lucas v. Bell Trans, 773 F. Supp. 2d 930, 937 (D. Nev. 2011) ("An employer may meet the requirement that its employees were engaged in activities that directly affect interstate commerce by showing that there was 'practical continuity of movement across state lines from the point of origin to the point of destination,' even if the route is wholly intrastate." (citation omitted)); Shoemaker, 2011 WL 836998, at *8 ("UPS package car drivers, even though they may be driving intrastate, are involved in interstate commerce because they are on the last leg of the package's journey from its original destination

---

[3](...continued)
employees who drove both light and heavy vehicles were subject to the MCA exemption and stating "when mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment" (citation and internal quotation marks omitted)); Hernandez v. Brink's, Inc., No. 08-20717-CIV, 2009 WL 113406, at *5 (S.D. Fla. Jan. 15, 2009) (same).

10

Case 5:09-cv-00411-BR   Document 88   Filed 05/07/12   Page 10 of 19

to its final delivery place."); Griffin v. Consol. Foods Corp., 587 F. Supp. 921, 924 (W.D.N.C. 1984) ("Where a driver's activities constitute part of a continuous or through movement of freight from points outside a state to retail stores within, the motor carrier's exemption is applicable to those activities regardless of whether they are carried out solely within one state."), aff'd, 771 F.2d 826 (4th Cir. 1985).

Finally, UPS must show that plaintiff's employment activities directly "affect safety of operation." Levinson v. Spector Motor Serv., 330 U.S. 649, 671 (1947); see also Troutt v. Stavola Bros., Inc., 107 F.3d 1104, 1107 (4th Cir. 1997) ("[T]he critical consideration in determining whether the Motor Carrier Act governs a motor carrier employee and so exempts him from FLSA is whether that employee's activities affect safety of operation." (citation and internal quotation marks omitted)). Here, it is undisputed that plaintiff has consistently worked as an Air Driver and a Cover Driver for UPS. Generally, "[t]he duties of drivers affect safety of operation . . . ."[4] Mayan v. Rydbom Exp., Inc., Civ. A. No. 07-2658, 2009 WL 3152136, at *3 (E.D. Pa. Sept. 30, 2009) (citing Levinson, 330 U.S. at 664-65); see also Benson v. Universal Ambulance Serv., Inc., 675 F.2d 783, 786 (6th Cir. 1982) ("It would appear to be beyond question that the driver of a common carrier vehicle directly affects the safety of operation of that vehicle."); Griffin, 587 F. Supp. at 924 ("[I]t is beyond question that, as the driver of a motor vehicle, plaintiff was engaged in activity affecting the safety of defendant's operations. The motor carrier's exception to the FLSA is grounded in the premise that the transportation of

---

[4] A "driver" as defined for the purposes of the MCA exemption is "an individual who drives a motor vehicle in transportation . . . in interstate or foreign commerce." 29 C.F.R. § 782.3(a). Furthermore, "[t]his definition does not require that the individual be engaged in such work at all times; it is recognized that even full-duty drivers devote some of their working time to activities other than such driving." Id.

11

goods by motor vehicle is a hazardous activity deserving of special regulation."); 29 C.F.R. §§ 782.2(b)(2), 782.3(b). Furthermore, plaintiff does not appear to contest that he directly affects the safety of vehicle operation. Thus, the court finds that UPS has satisfied its burden with regard to this element of the MCA exemption.

In his declaration in response to the motion for summary judgment, plaintiff repeatedly states that UPS's arguments are false and misleading (see Pl.'s Decl. Resp. Mot. Summ. J., DE # 78, at 1, 3-5, 9), but he has made very little attempt to dispute the essential facts pertaining to the MCA exemption. Instead, plaintiff has cited to a single Department of Transportation ("DOT") regulation, 49 C.F.R. § 395.1(e)(2), to support his argument that he does not fall under the power of the Secretary of Transportation at all due to his limited driving radius. Plaintiff fundamentally misunderstands the exemption set forth in 49 C.F.R. § 395.1(e)(2). This provision does not exempt him from all DOT regulations concerning qualifications and maximum hours. Rather, it indicates only that plaintiff is exempt, if at all, from certain provisions relating to consecutive hours of driving and to the recording of his duty status if he meets the conditions set forth in the regulation. As a result, the court finds plaintiff's argument that he does not fall under the power of the Secretary of Transportation to be without merit.[5] Accordingly, the court concludes that UPS is entitled to summary judgment because plaintiff is covered by the MCA exemption to the

---

[5] The court also emphasizes that the Secretary of Transportation need not actually regulate the driver or the employer in order for the MCA exemption to apply; rather, it is applicable whenever the Secretary has the authority to regulate a driver's hours and safety. See, e.g., Troutt, 107 F.3d at 1107 ("The [Supreme] Court has held that, in view of Congress's determination that safety is paramount, it is the agency's power under the Motor Carrier Act to regulate 'qualifications and maximum hours' that determines whether that statute applies, not whether the agency has exercised its power." (citation omitted)); Songer v. Dillon Res., Inc., 618 F.3d 467, 472 (5th Cir. 2010) ("[W]e have stated that '[t]he Secretary . . . need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply.'" (most alterations in original) (citation omitted)); Klitzke v. Steiner Corp., 110 F.3d 1465, 1468 (9th Cir. 1997) (For the MCA exemption to apply, "the Secretary need not actually regulate the driver or his employer; it applies whenever the Secretary has the authority to regulate a driver's hours and safety." (emphasis in original)).

FLSA.[6]

Moreover, the court finds that UPS would still be entitled to summary judgment even if plaintiff were not exempt from the FLSA's overtime provisions. As previously discussed, plaintiff has two separate FLSA overtime claims. First, plaintiff argues that he was paid an incorrect rate of pay under the collective bargaining agreement ("CBA") between UPS and the Teamsters labor union for weeks in which he worked overtime. (See Pl.'s Dep., DE # 76-2, at 102-03, 107-10.) However, the court has already dismissed plaintiff's claims relating to UPS's alleged violations of the CBA pursuant to the Labor Management Relations Act ("LMRA"). (See DE ## 4, 28, 29, 36, 37.) The law is clear that an employee cannot use the FLSA to litigate a claim that he was paid the wrong rate under a CBA. See, e.g., Vadino v. A. Valey Engineers, 903 F.2d 253, 265 (3d Cir. 1990) ("[T]he FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement."); Hoops v. KeySpan Energy, 794 F. Supp. 2d 371, 380 (E.D.N.Y. 2011) (granting employer's motion to dismiss FLSA overtime claim "based on the Plaintiff's representation that the Court would need to interpret the CBA to determine his entitlement to contractual shift differentials before adjudicating the FLSA claim"); Elswick v. Daniels Elec. Inc., 787 F. Supp. 2d 443, 450-51 (S.D. W. Va. 2011) (plaintiff's overtime claim depended on an interpretation of the CBA and therefore could be made only in an action under

---

[6] The court notes that plaintiff also appears to argue that the MCA exemption does not apply to him based on a letter that he received from the Federal Motor Carrier Safety Administration ("FMCSA") dated 3 September 2009. (Pl.'s Decl. Resp. Decl. J. Hale, DE # 79, at 4-5 & Ex. 1(b), DE # 79-2, at 3.) Plaintiff received this letter in response to a online complaint that he filed with the FMCSA relating to his claim that UPS allegedly altered his time records. Plaintiff submitted his wage-related complaint through a "Consumer Complaint Database" that is focused on "safety violation[s]." (Id., Ex. 1(b), DE # 79-2, at 2.) As a result, it is not surprising that the letter plaintiff received from the FMCSA in response to his complaint stated that "the allegations mentioned do not fall within the jurisdiction of the [FMCSA]." (Id. at 3.) It is apparent from the face of the letter that the FMCSA did not make any determination regarding the issue of whether plaintiff is subject to the MCA exemption.

13

Case 5:09-cv-00411-BR   Document 88   Filed 05/07/12   Page 13 of 19

section 301 of the LMRA and not under the FLSA).  As a result, plaintiff's FLSA claim relating to UPS's failure to pay him the correct wage under the CBA for weeks in which he worked overtime cannot succeed as a matter of law.

Second, plaintiff asserts that UPS made alterations to his electronic time records, which deprived him of the appropriate pay for the overtime that he worked.  The United States Supreme Court has outlined the burdens of the employer and employee when there is a claim for unpaid compensation under the FLSA.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-88 (1946), superseded in part on other grounds, 29 U.S.C. § 251 *et seq*.  Specifically, an employee who brings suit for unpaid overtime compensation "has the burden of proving that he performed work for which he was not properly compensated."  Id. at 687.  Notably, however, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes" for those records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.  In this situation, the burden of proof then shifts to the employer, who in order to prevail must "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  Id. at 687-88.

In response to plaintiff's claim, UPS argues that pursuant to the generous overtime provisions of the CBA, plaintiff actually received more overtime pay than he was statutorily entitled to under the FLSA.  "It is undeniable that certain contractual overtime payments are creditable towards a deficiency in FLSA overtime payments."  Cox v. Town of Poughkeepsie,

14

N.Y., 209 F. Supp. 2d 319, 329 (S.D.N.Y. 2002) (citing 29 U.S.C. § 207(h)(2)).

Here, plaintiff does not dispute that UPS was paying overtime wages at a more generous rate than that required by the FLSA. (See Pl.'s Dep., DE # 76-2, at 51-53.) Furthermore, plaintiff fails to identify any work week where he did not receive at least one and one-half times his regular rate of pay for all of the overtime hours that he claims to have worked.[7] While plaintiff has directed the court to Exhibit 2 of his declaration in response to the motion for summary judgment (see Pl.'s Decl. Resp. Mot. Summ. J., DE # 78, at 5 ¶ 3), he does not explain how the confusing calculations set forth in the exhibit support his claim. In fact, Exhibit 2 appears only to address the issue of whether plaintiff was paid the correct wages under the CBA and does not address the alleged shortages of time. (Id., Ex. 2, DE # 78-2.) The court is not required to simply accept plaintiff's conclusory allegations that he is entitled to overtime pay as a result of alterations made to his time records where he has provided no coherent evidence to substantiate his claim.[8] See, e.g., Harvill v. Westward Commc'ns L.L.C., 433 F.3d 428, 441 (5th Cir. 2005) (affirming summary judgment for defendant employer where plaintiff "offered no factual allegations at all to substantiate her claim, and she presented no evidence of the amount or the extent of hours she worked without compensation" (emphasis omitted)); DiSantis v.

---

[7] By way of further illustration, the court notes that during plaintiff's deposition, he was asked about a particular week in November 2011 where he maintains that although he had worked 40.57 hours, his paycheck reflected that he had worked only 40.35 hours, thereby creating an alleged shortage of 0.22 hours in overtime pay. However, plaintiff admitted that even though he had worked less than one full hour of actual overtime during this particular week, he received 11.78 hours of overtime pay. (Pl.'s Dep., DE # 76-2, at 99-100 & Ex. 11.)

[8] For example, even if the court assumes that Exhibit 2 of plaintiff's declaration in response to the motion for summary judgment does somehow address the alleged shortages of time, plaintiff makes statements in the exhibit indicating that he worked "over 40 hours" during the weeks listed and that he was paid for "at least" a certain number of hours during those weeks. (Pl.'s Decl. Resp. Mot. Summ. J., Ex. 2, DE # 78-2.) Plaintiff's use of such language highlights the vagueness of his evidence. Furthermore, plaintiff has failed to offer any time cards or pay stubs as evidence to show the amount of hours for which UPS actually compensated him.

15

Morgan Props. Payroll Servs., Inc., Civ. A. No. 09-6153, 2010 WL 3606267, at *14 (E.D. Pa. Sept. 16, 2010) (Plaintiff's "vague, speculative, and unsupported testimony would make it impossible for a reasonable jury to even approximate damages for her [FLSA] claim because she has failed 'to show the amount and extent of [uncompensated work] as a matter of just and reasonable inference.'" (quoting Mt. Clemens, 328 U.S. at 687 (second alteration in original))); Daniels v. Finish Line, Inc., No. 2:07-cv-1501-GEB, 2008 WL 4814008, at *3 (E.D. Cal. Oct. 31, 2008) (plaintiff's failure to submit any evidence beyond bare allegations and vague undocumented estimates to support his claim that he was not adequately compensated because he was forced to work off the clock was insufficient to survive summary judgment); Simmons v. Wal-Mart Assocs., Inc., No. 2:04-CV-51, 2005 WL 1684002, at *10 (S.D. Ohio July 19, 2005) (employee's bald assertions of overtime hours worked, unsupported by any documentation, were insufficient to create a genuine issue of material fact). Therefore, the court finds that plaintiff has failed to produce sufficient evidence to withstand summary judgment on his overtime claim relating to the alteration of his time records.

In summary, the court has considered all of the parties' arguments, the record of this matter, and the relevant legal precedent, and has concluded that there is no genuine issue of material fact to be resolved. Accordingly, UPS's motion for summary judgment will be granted.

C.     Plaintiff's Motion for Default Judgment

On 24 February 2012, plaintiff filed a motion entitled "Motion for Default Judgment Against Defendant for Failure to Comply With Order for Production of Documents." (Mot., DE # 71, at 1.) He also filed a declaration in support of his motion. (DE # 72.) Plaintiff asserts that UPS has failed to comply with a court order dated 22 December 2011 (DE # 65), which required

16

UPS to produce certain documents relating to plaintiff's payroll information and time records.

Courts have broad discretion to impose sanctions for abuses of the discovery process, and Rule 37 explicitly makes available the sanction of "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi); see also Fed. R. Civ. P. 37(c)(1)(C), (d)(3). However, "[w]hen the sanction involved is judgment by default, the district court's 'range of discretion is more narrow . . . .'" Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989) (quoting Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503 (4th Cir. 1977)). In determining whether to impose the sanction of a default judgment, courts traditionally employ a four-part test analyzing the following factors:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

Id. The use of this test "insure[s] that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." Id.

The court notes at the outset that the applicability of the test to the facts in this case is unclear because it is uncertain that UPS violated the discovery process at all, as it contends that it turned over all the information in its possession. (See, e.g., Pl.'s Decl. Supp. Mot. Default J., Ex. A, DE # 72-1.) UPS asserts the following in support of its contention:

> UPS maintains payroll data, timecard data, and operational data in a master database that can be accessed, printed, and formatted in numerous different reports, based on the preferences of a particular manager at a particular point of time. The data itself is the same – the only thing that is different is the manner in which it is printed. The fact that UPS has not produced every report that may have ever been printed by a UPS manager at any given time is not a basis for

17

> noncompliance, particularly since it would be impossible for UPS to know how many different reports have been compiled and printed from this raw data.
>
> In short, UPS has produced to Plaintiff all of the raw data that could in any way relate to his claims, including the payroll and timecard information that would be necessary to prove an FLSA claim.

(UPS's Resp. Opp'n Mot. Default J., DE # 82, at 2-3.)

Regardless, the court has considered the four-part test out of an abundance of caution. On these facts, a brief analysis of only two of the factors will suffice. First, the court finds that UPS has not acted in bad faith. There is no clear evidence that UPS has purposefully attempted to avoid the production of documents or to withhold evidence. Second, the court finds that even if UPS has failed to provide certain documentation related to plaintiff's payroll and time records, he has not suffered any prejudice as a result. The court has ultimately concluded that there are separate and independent grounds for granting summary judgment to UPS in this case, one of which is that the overtime provisions of the FLSA do not apply to plaintiff because he is covered by the MCA exemption. In determining that plaintiff is subject to the MCA exemption, the court did not need to consider any evidence related to plaintiff's payroll and time records. Consequently, plaintiff was not prejudiced by any failure on the part of UPS to produce the documents at issue. In short, after reviewing the relevant factors, the court finds that there is no basis for entering a default judgment against UPS.

UPS argues that plaintiff should be ordered to pay its attorneys' fees and costs associated with responding to the motion for default judgment. The court declines to issue the requested sanctions.

Case 5:09-cv-00411-BR   Document 88   Filed 05/07/12   Page 18 of 19

## III.  CONCLUSION

UPS's motion for summary judgment (DE # 76) is GRANTED.  Plaintiff's motion to amend the complaint (DE # 70) and plaintiff's motion for default judgment (DE # 71) are DENIED.  The Clerk is directed to enter judgment in favor of UPS and close the case.

This 7 May 2012.

_____
W. Earl Britt
Senior U.S. District Judge
